# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

Kristopher B.,

        Plaintiff,

v.

Nancy A. Berryhill, Deputy Commissioner of Social Security for Operations,

        Defendant.

CASE NO. 3:18-cv-05485-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Kristopher B. filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in failing to properly consider the medical opinions of Kimberly Wheeler, Ph.D. Had the ALJ properly considered the medical opinion evidence, the ALJ may have determined Plaintiff is disabled or included additional limitations in the residual functional capacity ("RFC") assessment. Therefore, the ALJ's error is harmful and this matter should be reversed and

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 1

remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner of the Social Security Administration for Operations ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On April 7, 2016, Plaintiff protectively filed an application for SSI with a stipulated onset date of January 16, 2015 (partial reopening of a prior claim). *See* Dkt. 12, Administrative Record ("AR") 124-25, 340-45, 347. The application was denied upon initial administrative review and on reconsideration. *See* AR 254-62, 266-72. A hearing was held before ALJ Allen G. Erickson ("the ALJ") on June 13, 2017. *See* AR 110-96. In a decision dated December 26, 2017, the ALJ determined Plaintiff to be not disabled. *See* AR 20-42. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 7-13; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to properly consider: (1) the medical opinion evidence; (2) Plaintiff's subjective symptom testimony; (3) the lay witness testimony; and (4) the RFC and step five findings including Plaintiff's need for a cane and ability to frequently handle. Dkt. 14 at 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

**I.      Whether the ALJ erred in assessing the medical opinion evidence.**

Plaintiff alleges the ALJ failed to properly consider the medical opinion evidence of Kimberly Wheeler, Ph.D., an examining psychologist. Dkt. 14 at 4-8.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Wheeler examined Plaintiff on two occasions, once on February 22, 2016, and the second time on May 12, 2017. AR 501-05 (first examination), 830-34 (second examination).

In the first examination, Dr. Wheeler diagnosed Plaintiff with anxiety disorder, NOS; unspecified psychotic disorder; polysubstance chemical dependence in remission and cannabis ongoing; and rule out cognitive disorder, comprehension issue. AR 502-503. Dr. Wheeler noted Plaintiff's mood was dysphoric and anxious and affect was blunted and nearly flat, and Plaintiff had diminished comprehension, audio hallucinations, and impaired memory and concentration. AR. 504-05.

1   Dr. Wheeler opined Plaintiff had marked limitations[1] in his ability to adapt to changes in
2   a routine work setting; perform effectively in a work setting; and complete a normal work day
3   and work week without interruptions from psychologically based symptoms. AR 503. Dr.
4   Wheeler opined Plaintiff had moderate limitations[2] in his ability to perform activities within a
5   schedule, maintain regular attendance, and be punctual within customary allowances without
6   special supervision. AR 503. Dr. Wheeler opined Plaintiff had an overall severity rating of
7   "marked" based on the combined impact of his diagnosed mental impairments. AR 503. Dr.
8   Wheeler determined these limitations and impairments would persist for more than 12 months
9   and were not the result of drug addiction and alcoholism and would persist 60 days after
10  sobriety, with the need for treatment of chemical dependency. AR 504.

11  On May 12, 2017, Dr. Wheeler conducted her second examination. AR 830-34. Dr.
12  Wheeler diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic
13  features. AR 831. Dr. Wheeler observed Plaintiff's mood was profoundly dysphoric, affect was
14  flat, thought content was reflected despondency, insight was impaired by depression, and
15  attention was abraded. AR 834. Dr. Wheeler observed Plaintiff was preoccupied during
16  concentration tasks and Plaintiff reported audio hallucinations and he was giving up in life. AR
17  834. In her clinical findings, Dr. Wheeler noted Plaintiff suffered from depression, low energy,
18  suicidal thoughts, history of anger, impaired reading, and hearing voices. AR 831.

19  Dr. Wheeler opined Plaintiff had severe limitations[3] in his ability to communicate and
20  perform effectively in a work setting. AR 831. Dr. Wheeler opined Plaintiff had marked

---

[1] Defined as "a very significant limitation on the ability to perform one or more basic work activity." AR 503, 832.
[2] Defined as "significant limits on the ability to perform one or more basic work activity." AR 503, 832.
[3] Defined as "inability to perform the particular activity in [a] regular competitive employment or outside of a sheltered workshop." AR 832.

limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; the ability to adapt to changes in a routine work setting; and the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR 831-32. Dr. Wheeler found Plaintiff had moderate limitations in his ability to understand, remember, and persist in tasks by following very short and simple and detailed instructions; learn new tasks; make simple work-related decisions; ask simple questions or request assistance; set realistic goals and plan independently; and maintain appropriate behavior in a work setting. AR 832. Dr. Wheeler opined Plaintiff's overall severity rating was "severe" based on the combined impact of his diagnosed mental impairments. AR 832. Dr. Wheeler determined these limitations and impairments would persist 18 months or more and they were not the result of drug addiction and alcoholism, would persist after 60 days of sobriety, and vocational rehabilitation would not help. AR 831.

Dr. Wheeler found Plaintiff's mental health had substantially declined since the first examination in February 2016, noting:

> Substantial decline in functioning from last year -- level of despondency is alarming. Deeply depressed, increasing suicidal thoughts, though intent is somewhat curbed by knowing his dog needs him. Frankly, he's becoming at risk for hospitalization, given his acute lack of social support and increasing stressors….The bigger challenge for him right now is despondency - doesn't believe that actions he takes will make a difference. Has become deeply jaded, no longer trusting enough to make effective use of resources, so the likelihood of him staying mired in severe depression is high unless someone intervenes on his behalf. He's in no way capable of sustained employment, and likelihood of restoration within the year is virtually nil.

AR 833.

The ALJ assigned little weight to both of Dr. Wheeler's opinions, finding the opinions were inconsistent with the opinions of treating neurologist, Zhongzeng Li, M.D. and treating psychiatrist, Matthew E. Gomez, D.O. AR. 33-34. The ALJ reasoned Dr. Li found Plaintiff had a

normal mental status, AR 33 (citing AR 496, 499), and Dr. Gomez found Plaintiff was friendly and cooperative, had linear and logical thought process, no cognitive defects, and good insight and judgment, AR 33 (citing AR 882).

First, the ALJ cites to Dr. Li's treatment notes in which Plaintiff had normal memory, attention, language, and knowledge. AR 33 (citing AR 496, 499). However, the significance of these treatment notes is unclear. Plaintiff sought treatment from Dr. Li for his myotonic dystrophy and seizure disorder. AR 495. Dr. Li conducted a neurologic examination, but did not conduct a psychological evaluation or any psychological tests. *See* AR 495-99. Therefore, this evidence shows nothing more than Dr. Li was consulted for Plaintiff's myotonic dystrophy and seizures, and not for his mental impairments. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (lack of references to mental impairments in reports prepared by doctors who were consulted for other reasons "is not probative of anything except the fact that these physicians were consulted for other matters."); *Diedrich v. Berryhill,* 874 F.3d 634, 641 (9th Cir. 2017 (holding it was not proper to reject the plaintiff's testimony because her orthopedist did not note her mental health symptoms in an orthopedic evaluation).

Second, the ALJ cites to Dr. Gomez's treatment notes wherein he observed Plaintiff had linear and logical thought content and process, good judgment and insight, and no cognitive defects.[4] AR. 881-82.

---

[4] Defendant argues numerous other treatment notes show Plaintiff had a normal mood and affect, exhibited sound judgment, and acted cooperatively. Dkt. 18 at 7 (citing AR 485, 487, 518, 523, 529, 534, 541, 671, 674, 705, 716, 811, 816, 823, 828). However, the ALJ did not reference these treatment notes in his decision, and the Court will not consider Defendant's post-hoc rationalization. *Bray v. Comm'r of SSA,* 554 F.3d 1219, 1225–26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947) (other citation omitted) (According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

An ALJ is tasked with resolving conflicts and ambiguities in the medical record. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). They are often confronted with contradictory medical opinions from different doctors and must determine which to accept and which to reject. In order to reject an examining doctor's opinion which, as here, is contradicted by another doctor's opinion, an ALJ must provide specific and legitimate reasons for doing so. *Lester,* 81 F.3d at 830-31; *Andrews,* 53 F.3d at 1041-42.

However, "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey,* 849 F.2d at 421. To reject an examining physician's opinion, an ALJ "can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks and citation omitted).

Here, "[the ALJ] merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any specific medical opinions and findings he rejects. This approach is inadequate." *Embrey,* 849 F.2d at 422. The ALJ identified a contradiction between Dr. Wheeler's opinions and Dr. Gomez's opinion, but failed to provide his interpretation of the evidence and did not provide a detailed explanation as to why Dr. Wheeler's opinions should be discounted.

Moreover, the ALJ's decision to reject the opinions of examining psychiatrist Dr. Wheeler in favor of treating psychiatrist Dr. Gomez's opinion is not supported by the record. Dr.

Gomez treated Plaintiff once on August 17, 2016. AR 880-882. However, beyond an observation Plaintiff had no cognitive defects and was not psychotic or delusional, Dr. Gomez offered very little explanation for his findings. AR 882. Dr. Gomez recommended Plaintiff continue with individual therapy and his Gabapentin and Amitriptyline medications, but concluded Plaintiff was not a candidate for additional medication at this time.[5] AR 882. Dr. Gomez's opinion was not based on any psychological testing aside from what appears to be a brief mental status examination, nor did he offer any opinion as to the impact of Plaintiff's ability to obtain or maintain full-time employment. AR 880-82.

On the other hand, Dr. Wheeler examined Plaintiff on two occasions. AR 501-05, 830-34. Dr. Wheeler performed clinical interviews which documented Plaintiff's psychosocial, medical/mental health, educational/work, and substance abuse history. AR 501, 830-31. Dr. Wheeler outlined her clinical findings, listing the mental health symptoms which affected Plaintiff's ability to work. AR 502, 830-32. Dr. Wheeler conducted mental status examinations of Plaintiff which included a numerous psychological tests. *See* AR 504-05, 833-34. Based on these examinations, test results, and a review of Plaintiff's medical record, she found Plaintiff's mental impairments caused particular difficulty in his ability to sustain various work activities over a normal work day and work week in an ongoing, appropriate, and independent basis. AR 503, 831-33. Although she offered no specific opinion on Plaintiff's ability to obtain or maintain full-time employment in her first evaluation, Dr. Wheeler opined Plaintiff would likely make mistakes in a work setting, could not fully grasp instructions, was reluctant to ask questions and recommended a protective payee if awarded funds. AR 504. In a hypothetical posed to the

---

[5] Dr. Gomez indicated it was unsafe for Plaintiff to take additional medications based on his drug use. AR 882.

vocational expert ("VE") containing restrictions on an individual's ability to understand, remember and persist in tasks, the VE opined such a person could not perform any full-time work. AR at 194. In her second opinion, Dr. Wheeler opined Plaintiff is "in no way capable of sustained employment, and the likelihood of restoration within the year is virtually nil." AR 833

Plaintiff also contends the ALJ erred by finding the opinions of two non-examining psychologists, Carla van Dam, Ph.D. and Bruce Eather, Ph.D., were inconsistent with Dr. Wheeler's opinions. Dkt. 14 at 6-8. Defendant asserts the opinions of Drs. Eather and van Dam support the decision to discount the opinions of Dr. Wheeler. Dkt. 18 at 6-8. Although the ALJ cited the opinions of these non-examining consultants to support his decision to deny benefits, *see* AR 33-34, he did not cite these opinions as a basis for discounting the opinions of Dr. Wheeler. Even still, the opinion of a non-treating, non-examining consultant, without other substantial evidence, is an insufficient basis for discounting the opinions examining experts. *See Lester,* 81 F.3d at 831 (A non-examining physician's opinion may constitute substantial evidence only if "it is consistent with other independent evidence in the record."); *see also Ryan v. Commissioner,* 528 F.3d 1194, 1202 (9th Cir. 2008).

Thus, the ALJ's conclusory statement Dr. Wheeler's opinions are contradicted by the opinions of Drs. Li and Gomez is not supported by the record or any explanatory analysis and is not a legitimate basis for rejecting Dr. Wheeler's opinions.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific

application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). Furthermore, "the fact that the administrative law judge, had [he] considered the entire record, might have reached the same result does not prove that [his] failure to consider the evidence was harmless. Had [he] considered it carefully, [he] might well have reached a different conclusion." *Hollingsworth v. Colvin*, 2013 WL 3328609, *4 (W.D. Wash. July 1, 2013) (*quoting Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Had the ALJ properly considered all of Dr. Wheeler's opined limitations, the ALJ may have found Plaintiff disabled or included additional limitations in the RFC. For example, Dr. Wheeler found Plaintiff has moderate to severe limitations in his ability to understand, remember, and persist in tasks by following short and detailed instructions; adapt to changes in a routine work setting; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 503, 832. These limitations were not accounted for in the RFC. *See* AR 27-28 (RFC limited Plaintiff to light work with occasional interaction with the general public and he can understand, remember and apply short, simple instructions, perform routine tasks, and make simple decisions, but cannot work in a fast-paced production environment.). If Dr. Wheeler's opinions as to Plaintiff's limitations were included in the RFC and in the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed. Therefore, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

**II. Whether the ALJ provided proper reasons for discounting Plaintiff's subjective symptom testimony and the lay witness testimony.**

Plaintiff contends the ALJ erred in evaluating Plaintiff's subjective symptom testimony and the lay witness testimony from Tasha Lux. Dkt. 14 at 12-16. As previously stated, the Court concludes the ALJ committed harmful error in assessing the medical evidence. *See* Section I, *supra*. Because Plaintiff will be able to present new evidence and testimony on remand, and because proper consideration of the medical opinion evidence may impact the ALJ's assessment of Plaintiff's subjective symptom testimony and the lay witness testimony, the Court declines to consider whether the ALJ erred with respect to Plaintiff's testimony and the lay witness testimony. Instead, the ALJ shall reassess Plaintiff's subjective symptom testimony and the lay witness testimony as necessary on remand.

**III. Whether the RFC and Step Five findings are supported by substantial evidence.**

Plaintiff maintains the RFC and Step Five findings are not supported by substantial evidence. Dkt. 14 at 16-18. Specifically, Plaintiff argues the ALJ did not provide sufficient reasons for not finding Plaintiff needs a cane to ambulate and the finding Plaintiff can sustain frequent handling. Dkt. 14 at 8-12. The Court has found the ALJ committed harmful error and has directed the ALJ to reassess medical opinion evidence, Plaintiff's subjective symptom testimony, and the lay witness testimony on remand. *See* Sections I.-II., *supra*. Hence, the ALJ shall reassess the RFC on remand. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is directed to re-evaluate Step Five to determine whether there are jobs existing in

significant numbers in the national economy Plaintiff can perform given the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the VE defective when the ALJ did not properly consider two physicians' findings).

### IV. Whether an award of benefits is warranted.

Lastly, Plaintiff requests the Court remand this case for an award of benefits. Dkt. 14 at 2.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined the ALJ committed harmful error and has directed the ALJ to re-evaluate medical opinion evidence from Dr. Wheeler, Plaintiff's subjective symptom testimony, the lay witness testimony, the RFC, and the Step Five findings on remand. Because outstanding issues remain regarding the medical evidence, Plaintiff's testimony, the lay witness testimony, the RFC, and Plaintiff's ability to perform jobs existing in significant numbers in the national economy, remand for further consideration of this matter is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 4th day of April, 2019.

David W. Christel
United States Magistrate Judge